U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR - 5 2021
CLERK, U.S. DISTRICT COURT
By_____
      Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AIMEE A. DELEON, | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:20-CV-124-A |
| | § |
| ANDREW SAUL, | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Aimee A. DeLeon ("DeLeon") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). DeLeon protectively filed her application for DIB in October 2013, alleging that her disability began on July 24, 2013.[1] (Transcript ("Tr.") 10; see Tr. 169-70.) After this application was denied initially and on reconsideration, DeLeon filed a written request for a hearing on July 28, 2016. (Id.; see Tr. 67-112.) Thereafter, in March 2018, DeLeon

---

[1] DeLeon, on November 30, 2018, amended her alleged onset date of disability to June 30, 2017. (Tr. 10; see Tr. 192.)

1

protectively filed her application for SSI. (*Id.*) The ALJ held a hearing on November 30, 2018 and issued a decision on March 18, 2019 denying DeLeon's applications for benefits. (Tr. 7-24; *see* Tr. 34-66.) On December 12, 2019, the Appeals Council denied DeLeon's request for review, leaving the ALJ's March 18, 2019 decision as the final decision of the Commissioner in DeLeon's case. (Tr. 1–4.) DeLeon subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1;

20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[2] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if

---

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv) 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUES

In her brief, DeLeon presents the following two issues:

1. Whether there is substantial evidence to support the ALJ's mental RFC determination; and

2. Whether the ALJ erred in failing to find that DeLeon met section 1.04 of the Listing. (Plaintiff's Brief ("Pl.'s Br.") at 3, 11-17.)

## III. ALJ DECISION

In his March 18, 2019 decision, the ALJ found that DeLeon met the insured status requirements of the SSA through December 31, 2017 and had not engaged in any substantial gainful activity since June 30, 2017, her amended onset date of disability. (Tr. 12.) At Step Two, the ALJ found that DeLeon suffered from the following "severe" impairments: "degenerative disc disease of lumbar spine, carpal tunnel syndrome, hypertension, history of pulmonary embolism on anti-coagulants, obesity, and depression." (Tr. 12.) At Step Three, the ALJ found that DeLeon did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 14-16.)

As to DeLeon's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a). In addition, the claimant is limited to frequent handling, fingering, and feeling bilaterally. She can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch. The claimant is precluded from crawling or climbing ladders, ropes, or scaffolding. The

claimant can understand, remember, and carry out detailed, but not complex tasks and instructions.

(Tr. 16 (emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that DeLeon was unable to perform her past relevant work. (Tr. 22-23.) However, based upon the testimony of a vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that DeLeon could perform. (Tr. 23-24.) Consequently, the ALJ found that DeLeon was not disabled. (Tr. 24.)

## IV. DISCUSSION

### A. <u>Mental RFC Determination</u>[3]

As to her first issue, DeLeon claims that the ALJ's mental RFC determination "was unsupported by substantial evidence as he appears to have crafted it out of whole cloth." (Pl.'s Br. at 11 (emphasis omitted).) In support of her claim, DeLeon, citing to, *inter alia*, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), argues:

> Here, the ALJ's RFC is unguided based on his own rationale. The ALJ afforded only "partial weight" to the opinions of the State agency consultants. . . . There were no other opinions of record. The ALJ has partially relied on the dated, non-examining opinions of physicians who reviewed Plaintiff's record prior to multiple surgeries in fashioning his RFC determination. It cannot be said that the ALJ's RFC determination is supported by substantial evidence.
>
> When reviewing their applicability to the current matter, it is important to consider that these opinions were created in May and September of 2014, and are thus incredibly dated considering Plaintiff's amended onset date in June of 2017. Remember, Plaintiff did not start seeking mental health treatment until after the State agency determinations were made. This is evidenced by the State agency determination of mental health symptoms finding her mental impairments non-severe, as she was not referred to or under the care of a mental health specialist. She was not referred for mental health treatment until 2017, long after they completed review of her file. The ALJ correctly determined that Plaintiff's mental

---

[3] The Court notes that, at times, DeLeon makes statements regarding her physical RFC. However, because DeLeon sets forth the issue as only involving her mental RFC determination, the Court will not analyze the ALJ's physical RFC determination.

5

> health impairments were severe, however, there was no medical opinion guiding the RFC. . . .
>
>     Perhaps the most damning evidence of the lack of substantial evidence is the ALJ's evaluation of Dr. Llanos' work slip. The ALJ noted that Dr. Llanos' late 2013 opinion was afforded "no weight" as it was "too remote as compared to the amended alleged onset date of disability" and Plaintiff's work after the opinion was made. Of course, the State agency opinions were not made long after Dr. Llanos' opinion was. The ALJ is clearly signaling that neither of these opinions are supported by substantial evidence due to their remote nature. . . . The ALJ must build an accurate logical bridge between the evidence and his conclusion. Such a bridge is not built by applying the same rationale differently to different opinions. . . .
>
>    . . . .
>
>     The ALJ's failure to properly develop the record and secure the testimony of a medical expert regarding Plaintiff's mental impairments is harmful error. The duty of the ALJ is one of inquiry, requiring the decision maker "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." Determining whether a claimant is disabled because of a mental condition under the sequential process can be a difficult task. This Circuit has observed that quite often the claimant is capable of finding a job and working for short periods of time. The nature of the mental impairment is such, however, that the claimant is unable to remain employed for any significant period of time.

(Pl. Br. at 12-15 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[4] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; see *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be

relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

---

considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

In this case, the ALJ found, as stated above, that DeLeon had the severe mental impairment of depression and had the mental RFC to understand, remember, and carry out detailed, but not complex tasks and instructions. (Tr. 12, 16.) In making the mental RFC determination, the ALJ stated, *inter alia*, the following:

> The claimant has alleged . . . irritability with others, . . . and depression limits her ability to work (Exhibits 2E, 14E, and Hearing Testimony). . . .
>
> . . . .
>
> The claimant presented with Katrina M. Roop, D.O., on December 8, 2016. She reported aching in her bones, extreme fatigue, and feeling down. . . . She was assessed with fatigue and menorrhagia with regular cycle (Exhibit 22F/10).
>
> . . . .
>
> The claimant presented with Christopher R. Cooper, M.D., on July 21, 2017. She was assessed with essential hypertension and moderate episode of recurrent major depressive disorder. Her dosage of Pristiq was increased at the exam. . . .
>
> The claimant presented with Allison Livens, LPC, on November 1, 2017. Her chief complaint was regarding depression. She reported weekly alcohol use. She was assessed with mood disorder, not otherwise specified (Exhibit 20F/18). The claimant presented for mental health therapy on November 10, 2017. She had a calm and talkative affect. Her hygiene was appropriate. She had a coherent and logical thought process. She reported her girlfriend was a daily agitator. She was advised to attend couples therapy. The claimant reported she had racing thoughts, such as her to do list for the next day, financial issues, and how she will help the household. She reported having many friends at work; however, being close to only one. The claimant reported she wanted to learn to be around people without feeling angry.
>
> . . . .
>
> The claimant had complaints of depression and hand pain on April 6, 2018. She was assessed with bilateral carpal tunnel syndrome, essential hypertension, mood disorder . . . .
>
> . . . On August 21, 2018, the claimant was given a trial of Seroquel for use at night. She did not want to see a psychology specialist. She was stable, but still had mood changes. . . .

> . . . .
>
> As for the opinion evidence, I considered and afforded partial weight to the opinions of State agency medical consultants, Robert Gilliland, M.D., and James Wright, M.D., at the initial level of consideration and Susan Thompson, M.D., and Andrea Fritz, M.D., at the reconsideration level (Exhibits 1A and 3A). The consultants found affective disorder was a non-severe impairment and spine disorder was a severe impairment. . . . The consultants have program knowledge and they supported their findings with objective evidence. However, only partial weight was afforded to their opinions because the evidence establishes the presence of a severe mental health impairment with the need for some corresponding work limits. . . .

(Tr. 17, 20-22.)

DeLeon, citing to *Ripley*, *supra*, and other similar cases, argues, in essence, that the ALJ erred when he made a mental RFC determination not based on any medical opinion in the record. (Pl.'s Br. at 11-15.) DeLeon claims that the only mental opinions in the record were the opinions of the SAMCS from May and September of 2014, which found that DeLeon did not have a severe mental impairment and were rendered before DeLeon was referred for mental health treatment in 2017. (Pl.'s Br. at 12.)

In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[6] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557– 58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because

---

[6] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

9

the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

In this case, as to her mental RFC determination, there is no opinion in the record that states the effects of DeLeon's depression on her ability to work. The SAMCs' opinion, which the ALJ disagreed with, found that DeLeon did not suffer from a severe mental impairment. Instead, the ALJ, based on DeLeon's testimony and other medical evidence in the record properly found that DeLeon suffered from the severe mental impairment of depression. In formulating the mental RFC determination that DeLeon was limited to understanding, remembering, and carrying out detailed, but not complex tasks and instructions, the ALJ appears to have relied on his own lay opinions. *Ripley*, however, expressly prohibits the ALJ from independently deciding the effects of Plaintiff's impairments on her ability to work. "[T]he ALJ may not play doctor and provide his own opinion as to [DeLeon's] limitations, especially when the opinion is unsupported by evidence in the record." *LaGrone v. Colvin*, No. 4:12-CV-792-Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013). While there is medical evidence in the record indicating DeLeon suffered from depression, none made any references to the effects these conditions had on DeLeon's ability to work. *See Branch v. Saul*, No. 3:19-CV-6-BN, 2020 WL 1529001, at *4-5 (N.D. Tex. Mar. 31, 2020). Consequently, the Court concludes that the final decision of the Commissioner is not supported by substantial evidence because the ALJ made the mental RFC assessment without a medical opinion addressing the effects of Plaintiff's mental impairments on her ability to work. *Id.* at 5.

However, "[p]rocedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). When an ALJ commits a *Ripley* error,

10

remand "is appropriate only if [Plaintiff] shows that he was prejudiced." *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 558, n.22. On this record, such prejudice has been established and remand is required.

### B. Section 1.04 of the Listing

In her brief, DeLeon also argues that the ALJ erred in not finding, at Step Three, that she met section 1.04 of the Listing. (Pl.'s Br. at 16.) Specifically, DeLeon states:

> If the ALJ performed more than a perfunctory analysis of Plaintiff's medical evidence in comparison to Listing 1.04, she would have been found disabled. In evaluating Listing 1.04, the ALJ merely recited the Listing, and stated that Plaintiff did not meet it. This failure to evaluate Listing 1.04 was harmful here, as substantial evidence supports the proposition that Plaintiff meets all criteria for this presumptive finding of disability.
>
> Here, Plaintiff meets Listing 1.04A due to her lumbar spine impairments. . . . Here, Dr. Shah reviewed MRI showing mild to moderate neurologic compression in the central and lateral recess regions. Compression tests were positive on the left side. Dr. Shah performed decompression surgery to relieve this, and Plaintiff required another decompression surgery in late 2016. Plaintiff has clearly evidenced compressed nerve roots, as shown by her multiple decompression surgeries. Plaintiff meets the objective guidelines for the first part of Listing 1.04. Additionally, Plaintiff's impairments have met, and continue to meet the remaining requirements of the listing. As early as 2014, Dr. Shah observed reduced ranges of motion, positive seated *and* supine straight leg raise tests, diminished strength in the lower extremities (muscle weakness), and diminished sensation (sensory loss). Plaintiff repeatedly reported radiating pain (neuroanatomic distribution of pain) and numbness. Similar objective findings repeated into 2016 and beyond. Thus, Plaintiff appears to meet every requirement of Listing 1.04A based on her lumbar spine. The ALJ's failure to provide any analysis was error, in light of this.

(Pl.'s Br. at 16-17 (internal citations omitted).)

To obtain a disability determination at Step Three, a claimant must show that her impairments meet or equal one of the impairments in the Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal

11

question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. §§ 404.1526(c), 416.926(c).[7] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

The claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531, *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619. "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No.

---

[7] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. §§ 404.1526(c), 416.926(c).

7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Listing 1.04A, which deals with presumptive disability for spinal disorders, states that a claimant will be found disabled if she has:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A. "These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegations . . . ." § 1.00D. The claimant must also demonstrate that he met the listing criteria for a period that lasted or is expected to last at least twelve months. *Woods v. Colvin*, No. 3:14-cv-1990-B-BH, 2015 WL 5311142, at *12 (N.D. Tex. 2015); 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2).

In this case, with respect to section 1.04 of the Listing, the ALJ wrote, in pertinent part:

> Listing 1.04, regarding disorders of the spine, is not met or equaled as the record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory reflex loss, and positive straight leg raising in both the sitting and supine positions. Furthermore, the evidence fails to establish spinal arachnoiditis or lumbar spinal stenosis with pseudo-claudication.

(Tr. 14.) While there is evidence, as pointed out by DeLeon, that she does potentially meet section 1.04 of the Listing, there is also some potential evidence to the contrary. The relevance and timeliness of all evidence should be evaluated. Because the Court is recommending remand on the mental RFC issue above, the Court recommends that the ALJ, upon remand, revisit whether DeLeon meets section 1.04A of the listing as well.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings, conclusions, and recommendation.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest

injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 19, 2021**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED April 5, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE